## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| PACIFICSOURCE HEALTH PLANS,<br><br>Plaintiff,<br><br>v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | **No. CV-21-64-BU-BMM**<br><br><br>**ORDER** |

### INTRODUCTION

Plaintiff PacificSource Health Plans ("PacificSource") has filed this action against Defendant Atlantic Specialty Insurance Company ("ASIC") seeking declaratory judgment related to insurance coverage. (Doc. 1.) ASIC has filed a motion for summary judgment. (Doc. 51.) PacificSource opposes the motion and has filed a cross motion for partial summary judgment. (Doc. 62.) The Court held a hearing on the motions on February 5, 2024. (Doc. 74.)

### BACKGROUND

PacificSource provides health insurance in the state of Montana. (Doc. 61 at 1-2.) PacificSource purchased a Managed Care Errors and Omissions Policy ("E&O Policy") from ASIC. (*Id.*) The E&O Policy provides $10,000,000 in coverage for

claims against PacificSource for errors made in the handling and adjusting of PacificSource's health insurance claims. (Doc. 54-1.)

A Montana resident initiated a class action lawsuit against PacificSource ("*Gardner* Lawsuit"). (Doc. 54-2.) The class action challenged PacificSource's practice of denying coverage where third-party automobile or premises liability insurance may apply. (*Id.* at 4-7.) PacificSource tendered the *Gardner* Lawsuit claim to ASIC. (Doc. 61 at 5.) ASIC agreed to defend under a general reservation of rights. (*Id.* at 7.) The Montana Eighteenth Judicial District Court granted certification of the *Gardner* Lawsuit class. (Doc. 54-5.)

The Montana Eighteenth Judicial District Court outlined the following available class remedies upon proof of the class claim:

   a.  Declaratory relief that PacificSource has acted illegally and/or in breach of contract by reducing benefits without conducting a made-whole analysis in violation of Montana law.
   b.  Mandatory injunctive relief requiring PacificSource to:
        i.   Give all class members court-approved notice of the right and opportunity to obtain re-opening and re-adjustment of their individual claims by timely returning a proof of claim form
        ii.  Re-open and re-adjust each individual claim upon receipt of a timely filed proof of claim.
        iii. Refrain from violating the made-whole laws in the future.
        iv.  Eliminate the illegal provisions in its policies and discontinue misrepresenting Montana law through the "Making Sense of Third-Party Recovery" brochure; the Physician and Provider Manual; the Notice of Right of Recovery Letter; and the explanation of Codes 5BR and 5BK in its EOB's.

(Doc. 54-5 at 16.)

PacificSource subsequently admitted "[PacificSource's] denial of [the *Gardner* Lawsuit's] Plaintiff's claim for payment of certain medical expenses because of the possible existence of third-party liability insurance was not in accord with Montana law." (Doc. 54-6 at 3.) The Montana Eighteenth Judicial District Court awarded the class summary judgment on the breach of contract claim. (Doc. 54-7 at 6.) PacificSource alleges that PacificSource's counsel, Robert Lukes, kept ASIC updated about the development of notice procedures. (Doc. 61 at 11.) Lukes sent an email to ASIC on October 19, 2020, advising that PacificSource would need to send out approximately 130,000 notices with an estimated cost between $177,000 and $227,000. (*Id.*) ASIC's representative reportedly responded the next day that she would let Lukes know if she had any questions. (*Id.*)

ASIC sent a letter to PacificSource on January 27, 2021, analyzing whether the E&O Policy covered costs associated with notifying class members. (Doc. 54-8.) ASIC's letter asserted that the notification costs constituted a type of injunctive relief expressly excluded from the definition of "Damages" that the E&O Policy covered. (Doc. 54-8 at 3.) ASIC's letter further asserted that the notification costs did not meet the definition of "Claim Expenses." *Id.* ASIC explained that the notification costs constituted a form of relief rather than a cost incurred in investigating or defending the *Gardner* class claim. (*Id.*)

The Montana Eighteenth Judicial District Court issued an order on February 8, 2021, that required PacificSource to send notice to the class members of the *Gardner* Lawsuit. (Doc. 59-2 at 2.) The Montana Eighteenth Judicial District Court further required PacificSource to pay all charges associated with sending the notices through a third-party administrator. (*Id.* at 6.) PacificSource has paid $182,154.33 for notification of class members, $643,053.04 in made-whole payments, and $226,057.16 in interest payments so far. (Doc. 65 at 14.)

The Parties stipulate that the amount of the made-whole and interest payments is not ripe for adjudication and that PacificSource reserves the right to seek judgment in a specific amount later. (Doc. 71.) PacificSource filed this action in August 2021 seeking a declaratory judgment that the E&O Policy provides coverage for the notification costs, *Gardner*'s and class attorney's fees, and "other Damages and Claim Expenses incurred in the [*Gardner* Lawsuit.]" (Doc. 1 at 4-6.) The parties have filed cross motions for summary judgment. (Doc. 51; Doc. 62.)

## STANDARD OF REVIEW

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

## DISCUSSION

PacificSource contends that the costs incurred by PacificSource to notify the class members in the *Gardner* Lawsuit constitute "Claim Expenses" under the E&O Policy, and that the made-whole payments paid by PacificSource in reprocessing the *Gardner* class members' claims and the *Gardner* class attorney's fees constitute "Damages" under the E&O Policy. (Doc. 65 at 13.) ASIC argues that such costs fall outside the definitions of covered "Damages" and "Claim Expenses." (Doc. 52 at 8-10.)

## I. "Claim Expenses"

### a. Whether the E&O Policy covers the costs associated with notifying the *Gardner* Lawsuit class members

The E&O Policy provides, in relevant part, the following definition for "Claim Expenses":

> Claim Expenses means the reasonable and necessary legal and expert fees and expenses incurred in the investigation, adjustment, defense or appeal of any Claim, including the costs of electronic discovery and, with our prior written consent, public relations consultant expenses.

(Doc. 54-1 at 11.) PacificSource argues that the costs incurred in sending notice to the *Gardner* Lawsuit class members pursuant the Montana Eighteenth Judicial District Court order constitute "Claim Expenses." (Doc. 65 at 13.) PacificSource

contends that it had to send notices to class members to investigate whether class members were entitled to an adjustment of their original claim and to obtain the information necessary to re-adjust those claims. (*Id.* at 16.) PacificSource does not contend that the E&O Policy would cover the notice costs as "Damages." (Doc. 54-9 at 3); *see generally* (Doc. 65).

The costs associated with notifying class members fall outside the coverage of the E&O Policy. For purposes of the "Claim Expenses" definition, the "Claim" in this instance is the "written demand (including a written demand in electronic form) from [the *Gardner* class] seeking money or services or civil, injunctive, or administrative relief from [PacificSource]." *See* (Doc. 54-1 at 10.) "The language of a contract governs its interpretation if that language is clear and explicit." *Nat'l Indem. Co. v. State*, 499 P.3d 516, 537 (Mont. 2021) (internal quotations omitted) (citing Mont. Code Ann. § 28-3-401). The E&O Policy's language proves clear and explicit. "Claim Expenses" include only those expenses necessarily incurred to investigate, defend, adjust, or appeal a claim against PacificSource.

PacificSource did not incur the class notification costs "in the investigation, adjustment, defense or appeal" of the *Gardner* Lawsuit claim. The Montana Eighteenth Judicial District Court ordered the class notification costs as a class remedy *after* having made a finding of liability. *See* (Doc. 59-2.) In other words, the Montana Eighteenth Judicial District Court resolved the "Claim" asserted in the

*Gardner* Lawsuit and only then ordered the remedy, including the requirement that PacificSource send notices. Plaintiffs in a class action suit generally bear the costs of class notification. *St. James Cmty. Hosp., Inc. v. Dist. Court*, 77 P.3d 534, 537 (Mont. 2003). It proves proper to impose the costs of class notification on a defendant only once the liability of the defendant has been established. *Id.* The Montana Eighteenth Judicial District Court identified imposition of class notification costs on PacificSource as a form of class "*relief.*" (Doc. 54-5 at 16) (emphasis added). ASIC owes no duty to indemnify PacificSource for the notification costs as "Claim Expenses."

## II.    "Damages"

The E&O Policy provides the following definition of "Damages."

> Damages means any settlements, judgments, pre-judgment interest, post-judgment interest, claimant's attorney's fees in an amount equal to the percentage that any Damages covered under this Policy for any settlement or judgment bear to the total amount of such judgment or settlement, or other amounts (including punitive, multiple, or exemplary damages if insurable under the Law Most Favorable to Insurability) which you are legally obligated to pay as a result of a Claim.

(Doc. 54-1 at 11.) The E&O Policy goes on to list six exclusions from the definition. (*Id.* at 11-12.)

### a.  Whether the E&O Policy covers the made-whole payments to *Gardner* class members

PacificSource contends that made-whole payments to *Gardner* class members constitute "Damages" covered by the E&O Policy. (Doc. 65 at 21-30.)

### i.  The Equitable Relief Exclusion proves unambiguous.

The E&O Policy excludes from its definition of "Damages" any non-monetary or equitable relief or redress ("Equitable Relief Exclusion"):

> Damages does not include:
>    2)  any non-monetary or equitable relief or redress, including but not limited to any cost or expense of complying with any injunctive, declaratory, or administrative relief or specific performance award;

(Doc. 54-1 at 11.)

"If the terms of an insurance policy are ambiguous, obscure, or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail, particularly if an ambiguous provision attempts to exclude the liability of the insurer." *Rolan v. New West Health Servs.*, 504 P.3d 464, 473 (Mont. 2022) ("*Rolan III*") (internal quotations omitted). "[E]xclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." *Nat'l Indem. Co.* at 538 (internal quotations omitted).

The Montana Supreme Court considered the effect of an exclusion clause in an insurance policy in *Huckins v. United Servs. Auto. Ass'n*, 396 P.3d 121 (Mont. 2017). In *Huckins*, a homeowner possessed a homeowner's insurance policy that contained a failure-to-disclose exclusion, barring coverage for injury arising out of the insured's failure to disclose information "regarding the sale or transfer of real or

personal property." *Id.* at 125. The insured homeowner sold the house. *Id.* at 123. The house buyer sued the insured homeowner for failure to include information about basement flooding at the covered residence in a disclosure form that the insured seller completed before closing. *Id.* at 122-123. The insured homeowner entered a consent judgment with the buyer and sued seller's insurer for breach of the insurer's duty to defend him, among other claims. *Id.* at 123. The Montana Supreme Court read the failure-to-disclose exclusion "narrowly and strictly." *Id.* (citing *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 355 (Mont. 2013)). The Montana Supreme Court nonetheless concluded that the exclusion "clearly exclude[d] coverage for an insured's failure to disclose information 'regarding the sale or transfer of real … property.'" *Id.* (alteration in original).

PacificSource argues that the Equitable Relief Exclusion pertains only to non-monetary relief. (Doc. 65 at 25.) The text of the exclusion defies such a narrow construction. *Compare Huckins* at 125. The Equitable Relief Exclusion explicitly includes not only "any non-monetary [. . .] relief or redress" but also "any [. . .] equitable relief or redress." (Doc. 54-1 at 11.) "The language of a contract governs its interpretation if that language is clear and explicit." *Nat'l Indem. Co.* at 537. The Equitable Relief Exclusion clearly and explicitly excludes "any equitable relief or redress" from the meaning of "Damages."

### ii.  The made-whole payments fall within the Equitable Relief Exclusion.

The plain language of the Equitable Relief Exclusion includes the made-whole claims re-adjustment ordered by the Montana Eighteenth Judicial District Court. The Equitable Relief Exclusion explicitly contemplates monetary "expense[s]" associated with complying with injunctive relief. (Doc. 54-1 at 11.) PacificSource's made-whole payments fall under this Exclusion. PacificSource concedes that its "expenses in rewriting its policies, revising its claims practices, and processing each claim" constitute such "costs of complying." (Doc. 65 at 25.) PacificSource cannot distinguish made-whole payments stemming from the same declaratory and injunctive relief ordered by the Montana Eighteenth Judicial District Court.

The Montana Supreme Court addressed whether a different E&O policy covered made-whole payments in *Rolan III* at 464. The health insurer in *Rolan III* similarly violated made-whole laws as to its insureds and was sued by its insureds in a class action. *Id.* at 469. The Montana state district court certified the class in *Rolan III* under M. R. Civ. P. 23(b)(2). *Rolan v. New W. Health Servs.*, 405 P.3d 65, 66 (Mont. 2017) ("*Rolan II*"); *see generally Rolan v. New W. Health Servs.*, 307 P.3d 291, 297 (Mont. 2013) ("*Rolan I*"). The Montana Eighteenth Judicial District Court likewise certified the *Gardner* class under M. R. Civ. P. 23(b)(2). (Doc. 54-5.)

In *Rolan III*, the health insurer and class members entered a settlement agreement approved by the court that provided that "the class is 'eligible for consequential and compensatory damages caused by New West's violation of made-whole laws, either under a tort theory or a contract theory for breach of contract.'" *Rolan III* at 469. The health insurer had obtained an errors and omissions ("E&O") liability policy. *Id.* at 467. The E&O provider challenged whether its policy covered the health insurer's loss. *Id.* at 469. The E&O policy in *Rolan III* excepted "fees, amounts, benefits or coverage owed under any contract with any party" from the definition of "loss." *Id.* at 473.

The E&O provider argued that amounts paid to the insureds represented amounts due under the health insurer's contract with the insureds, and, thus, were excepted from coverage as a "loss" under the E&O policy. *Id.* at 473. The Montana Supreme Court upheld the Montana state district court's rejection of this argument. *Id.* at 474. The Montana Supreme Court in *Rolan III* noted that "[t]he settlement agreement in this case requires New West to pay *tort damages* stemming from its violation of Montana's made-whole provision 'and/or' for *consequential damages* stemming from any breach of contract." *Id.* at 473 (emphasis added). The Montana Supreme Court recognized that "two possible avenues" existed for recovery, tort damages and breach of contract damages. *Id.* The Montana Supreme Court noted that the "class settlement is not an amount due under a contract, rather it covers the

class's damages stemming from New West's failure to fulfill its made-whole duty—under Montana law and independent of the terms of the [E&O p]olicy." *Id.* at 474.

*Rolan III* does not require the Court to find PacificSource's made-whole payments constitute "Damages" outside the Equitable Relief Exclusion. Although the class in *Rolan III* achieved certification under M. R. Civ. P. 23(b)(2), the settlement in *Rolan III* consisted of a monetary payout and not of declaratory or injunctive relief. *See Rolan III* at 473. Made-whole claims re-adjustments made in compliance with the Montana Eighteenth Judicial District Court's order at issue in this matter constitute neither "tort damages" nor "consequential damages." *See generally* (Doc. 59-2.) The relief ordered by the Montana Eighteenth Judicial District Court at issue in this matter further differs from the settlement in *Rolan III* because that settlement placed a specified monetary sum in a common fund. *Rolan III* at 469. The Montana Eighteenth Judicial District Court did not calculate made-whole payments to *Gardner* class members. The Montana Eighteenth Judicial District Court instead imposed injunctive relief that includes requiring PacificSource to re-open and re-adjust *Gardner* class claims. (Doc. 59-2.)

The class relief here more closely parallels the relief contemplated in *Diaz v. Blue Cross & Blue Shield of Montana*. 267 P.3d 756 (Mont. 2011), *abrogated on other grounds by Chipman v. Nw. Healthcare Corp.*, 288 P.3d 193 (Mont. 2012). Plaintiff insureds in *Diaz* sued for a declaratory judgment that defendant insurer's

practices violated made-whole laws, an "injunction requiring [defendant insurer] to calculate and pay amounts wrongfully withheld, plus interest," and an injunction barring the defendant insured from continuing made-whole law violations against insureds. *Id.* at 760. The Montana Supreme Court determined that the Montana state district court erred by failing to certify the *Diaz* class under M. R. Civ. P. 23(b)(2). *Id.* at 765-767. The Montana Supreme Court reasoned that certification proved appropriate because "[a]ny individual determination regarding whether class members have been made whole will not occur in the context of this class action claim." *Id.* at 766. In other words, the Montana Supreme Court recognized that an injunction requiring a defendant "to calculate and pay amounts wrongfully withheld, plus interest" corresponded to the requirement of M. R. Civ. P. 23(b)(2) that "final *injunctive* relief or corresponding *declaratory* relief is appropriate respecting the class as a whole." (Emphasis added). The class relief at issue in this matter requiring PacificSource to re-open and re-adjust claims likewise constitutes injunctive relief.

"[A]ny [. . .] equitable relief or redress" encompasses the type of incidental monetary relief in the form of made-whole payments awarded in the *Gardner* Lawsuit. The Montana Eighteenth Judicial District Court stated that "[i]n reprocessing benefits *pursuant to the injunctive relief ordered* by the Court, PacificSource *shall provide the benefits* that would have been due under the terms of the [*Gardner* class] members' applicable health benefit plan, plus statutory

interest." (Doc. 64-2 at 5) (emphasis added). PacificSource, in turn, conducted the made-whole claims re-adjustments pursuant to the Montana Eighteenth Judicial District Court's order of injunctive relief against PacificSource. The injunctive order required PacificSource to re-open and re-adjust the class members' insurance claims. (Doc. 59-2.)

The Montana Eighteenth Judicial District Court characterized re-opening and re-adjusting the claims as "incidental monetary relief." (Doc. 64-2 at 3-4) ("[I]n these types of class actions, Rule 23(b)(2) injunctive relief may include incidental monetary relief, but this relief *pertains to an insurer reprocessing claims in accordance with the court's declaratory and injunctive orders under a given policy of insurance*" (emphasis added)). "Even though a party may seek money as a form of equitable relief, an award of money is not necessarily an award of damages[.]" *N. Cheyenne Tribe v. Lujan*, 804 F. Supp. 1281, 1287-88 (D. Mont. 1991) (internal citations omitted). Any payments that PacificSource may make related to its made-whole claims re-adjustment represent a cost of complying with the Montana Eighteenth Judicial District Court's order that PacificSource re-open and re-adjust *Gardner* class claims. *See* (Doc. 59-2.) The E&O Policy provides no coverage for such payments.

### iii.  The Equitable Relief Exclusion proves enforceable.

The E&O Policy includes six exclusions from the definition of "Damages," including the Equitable Relief Exclusion and the following items:

> 1) any fine, penalty, forfeiture, sanction, tax, fee, liquidated damages, or amount imposed by statute, rule, regulation, or other law;
>    [. . .]
> 3) any payment, restitution, return, or disgorgement of any fee, profit, royalty, premium, commission, or charge, or any fund allegedly wrongfully or unjustly held or obtained, including but not limited to any profit, remuneration or advantage to which you were not legally entitled;
> 4) any amount any of you pay or may be obligated to pay under any contract or agreement, including but not limited to any policy, bond, benefit plan, or provider agreement;
> 5) any loss, cost, or expense of correcting, changing, modifying, or eliminating any policy, practice, procedure, system, or rule;
> 6) any matter that is uninsurable under applicable law.

(Doc. 54-1 at 11-12.)

"Courts must look at an insurance contract as a whole and attempt to reconcile the various parts to give each meaning and effect." *Nat'l Indem. Co.* at 537 (internal citations omitted); *see* Mont. Code Ann. § 33-15-316. Read as a whole, the E&O Policy's statements of what the term "Damages" does *not* include serve to limit and refine the meanings of the component concepts used in the affirmative definition of "Damages." A "settlement" as used in the "Damages" definition, for example, cannot describe a settlement with state regulators to pay some portion of a penalty imposed by a state regulation. *See* (Doc. 54-1 at 11.) The first set of exceptions

specifically excludes "any fine, penalty, forfeiture, sanction, tax, fee, liquidated damages[.]" *Id.* The E&O Policy defines "Damages" by placing an unmolded block of clay on the table and then using a multitude of exceptions to cut away slabs of otherwise included material. The law permits this drafting strategy.

An important practical question emerges: What does the E&O Policy actually cover? The affirmative definition of "Damages" as limited and shaped by the E&O Policy's compendium of exceptions includes, at least, certain money damages awards explicitly ordered by a court or certain monetary payouts established by a settlement. *Compare Rolan III*; *see* below. Moreover, Montana law includes the reasonable expectations doctrine, that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Transamerica Ins. Co. v. Royle*, 656 P.2d 820, 824 (1983). Courts developed the reasonable expectations doctrine "as a means to protect consumers from confusing or unclear contract language based on the recognition that most insurance contracts, rather than being the result of anything resembling equal bargaining between the parties, are truly contracts of adhesion." *Winter v. State Farm Mut. Auto. Ins. Co.*, 328 P.3d 665, 671 (internal citation and quotations omitted).

The E&O Policy lists the exclusions from the definition of "Damages" beginning on the same page, and as part of, the definition of "Damages." (Doc. 54-1 at 11.) The doctrine cannot prevent the exclusions to the definition of "Damages" from taking effect in this matter because "the terms of the policy at issue clearly demonstrate an intent to exclude coverage." *Fisher ex rel. McCartney v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 867 (Mont. 2013) (an exclusion that provided that no coverage was available for bodily injury to any insured clearly demonstrated an intent to exclude coverage); *see also Loendorf v. Emps. Mut. Cas. Co.*, 513 P.3d 1268, 1275 (Mont. 2022).

### b. Whether the E&O Policy covers interest on made-whole payments to *Gardner* class members

PacificSource contends that ASIC must indemnify it for interest payments ordered by the Montana Eighteenth Judicial District Court. (Doc. 65 at 21-29.) PacificSource argues that those payments constitute "Damages." *Id.* The interest ordered by the Montana Eighteenth Judicial District Court fits within the E&O Policy's initial definition of "Damages."

The Montana Eighteenth Judicial District Court ordered the following relief, in relevant part, regarding interest:

> PacificSource will calculate late-payment interest, at 10% per year and add that to the reimbursement amount. Interest will run from 30 days after the bill or invoice was submitted for the services provided or the date the expense was incurred, whichever is later, and shall run through the date PacificSource calculates the reimbursement amount. Payment

shall be made directly to the member within 30 days of the interest calculation. [etc.]

(Doc. 59-2 at 5.) The Montana Eighteenth Judicial District Court affirmatively enjoined PacificSource to re-adjust claims in accord with Montana's made-whole laws as it would have at the time that it failed to do so. *See id.* The Montana Eighteenth Judicial District Court imposed 10% per annum interest on top of the re-adjusted amount in accordance with Montana's made-whole laws as a penalty for PacificSource's failure to process the claims properly the first time. *See id.*

The Montana Eighteenth Judicial District Court characterizes the interest payments as "late-payment interest." (Doc. 59-2 at 5.) The payments could be viewed as a separate and additional remedy designed to compensate class members for their loss of use of funds to which they otherwise would have had access after the first round of claims adjustment. The flat-rate calculation of "10% per year [added] to the reimbursement amount" used by the Montana Eighteenth Judicial District Court tends to support such a reading. *Id.* In other words, the interest ought to compensate class members for the time between when they were first owed something from PacificSource and when they finally received it. The definition of "Damages" proves sufficiently "open to different constructions" as to whether "late-payment interest" falls within its definition. *Rolan III* at 473 (internal quotations omitted). As a result, "the construction most favorable to the insured or other beneficiary"—that is, that late-payment interest constitutes a "judgment" or an

18

"other amount[] which [PacificSource is] legally obligated to pay as a result of a Claim"—"must prevail." *Id.*

The Court now must determine whether the late-payment interest ordered falls within one of the six exclusions from "Damages." A reader conceivably could construe the Equitable Relief Exclusion's phrase "any cost or expense of complying with any injunctive [. . .] relief" sufficiently broadly to include any interest the Montana Eighteenth Judicial District Court ordered to be paid. (Doc. 54-1 at 11.) The ordered interest could be viewed as a cost or expense of complying with the order to re-open and re-adjust *Gardner* class member claims, perhaps as late-payment interests inherent in *re*-adjustment of a claim that should have been adjusted differently. *See* (Doc. 67 at 24-25) (ASIC's argument that the Montana Eighteenth Judicial District Court's ordered "late-payment interest" does not constitute pre- or post-judgment interest).

The phrase could support an alternate reading, however, of the Equitable Relief Exclusion that would not embrace the ordered interest payment. Interest, under this reading, does not constitute a "cost or expense of complying with injunctive [. . .] relief," because PacificSource could comply with the affirmative injunctive relief of re-opening and re-adjusting claims without providing any monetary relief to reflect that class members had to wait for payment. The late-payment interest represents a separate and distinct class relief under this reading, a "judgment" or an "other

19

amount[] which [PacificSource is] legally obligated to pay as a result of a Claim." *See* (Doc. 54-1 at 11.) Here, unlike payments made pursuant to the made-whole claims re-adjustments, the terms of the E&O Policy prove ambiguous or open to different constructions. *Rolan III*. The Equitable Relief Exclusion cannot exclude the ordered late-payment interest payments from the definition of "Damages." *Id.* The remaining five exclusions prove either inapplicable or ambiguous as to their application to the late-payment interest payments.

### c. Whether the E&O Policy covers the *Gardner* class members' attorney's fees

PacificSource argues that the E&O Policy's definition of "Damages" includes any class attorney fees that may be ordered in connection with the *Gardner* Lawsuit. (Doc. 65 at 30-31.) The E&O Policy covers only a percentage of attorney fees equal to the percentage that the covered "Damages" represent as to the total judgment or settlement. (Doc. 54-1 at 11.) As stated above, PacificSource's made-whole payments to *Gardner* class members do not constitute "Damages" as covered under the E&O Policy. Late-payment interest payments, though, do constitute "Damages." ASIC must indemnify PacificSource for attorney fees equal to the same percentage that the late-payment interest payments represent as to the total amount of "Damages" owed by PacificSource under a judgment or settlement in the *Gardner* Lawsuit.

## ORDER

It is **HEREBY ORDERED** that

1.  ASIC's Motion for Summary Judgment (Doc. 51) is **GRANTED in part and DENIED in part**.

2.  PacificSource's Cross Motion for Partial Summary Judgment (Doc. 62) is **GRANTED in part and DENIED in part**.

**DATED** this 12th day of March, 2024.

_____
Brian Morris, Chief District Judge
United States District Court